*Addison*,
January,
1826.

Richardson
*vs.*
Denison.

ELEAZOR RICHARDSON, defendant below, *vs.* ZINA DENISON, plaintiff below.—*IN ERROR.*

The party who tenders his bill of exceptions, with a view to a writ of error, must, at his peril, place so much there, as shows that the county court did err. This must be made to appear, either, by stating definite law points, arising as on objections to evidence, or written motions to dismiss, which stand demurred to, &c.; or, by stating the *whole* evidence, the legal import of which is embraced in the decision; and, in the latter case, *(it would seem,)* the bill of exceptions must *state*, that no other evidence was given, tending to prove the point embraced in the decision, than that which is detailed.

A judgment of the county court must be reversed, for want of jurisdiction, in the justice of the peace, from whom the cause was appealed, notwithstanding the objection was not taken below, if such want of jurisdiction appear upon the record.

Although the *cause of action*, set forth in the several counts, in a declaration, would amount to more than one hundred dollars, provided the claims were for different matters in point of fact, still where the Court perceive that the different counts are for one and the same thing, and the *ad damnum* does not exceed $100, the action is held to be within the jurisdiction of a justice of the peace.

THE plaintiff below brought his action before a justice of the peace, in which the defendant below, was attached to answer, "in an action on the case, for debt for rent, for $70,00 which the defendant owes to the plaintiff, for use of the farm, where the plaintiff now lives," &c. *Ad damnum* seventy-five dollars. The writ was dated Nov. 27, 1823. The cause came, by appeal, to the county court.

In the county court, the plaintiff below filed a new declaration, containing *two* counts, in *assumpsit*, as follows:

"And now the said Zina, in court here, complains against the said Eleazer, in a plea of the case, for that, whereas, the said Eleazer, heretofore, to wit, at Bristol, aforesaid, in said county, on the 7th day of August, A. D. 1821, was indebted to the said Zina, in the sum of 75 dollars, for the use and occupation of a certain dwelling-house, buildings and land, with the appurtenances thereof, of the said Zina, situate, &c.; and being the same land conveyed by the said Eleazer to the said Zina, by deed, dated August 7th, 1819, by the said Eleazer, and at his special instance and request, and by the sufferance and permission of the said Zina, for a long time, to wit, for the term of two years from and after the said seventh day of August, 1819, fully completed and ended, had held, used, occupied, and enjoyed; and being so indebted, he the said Eleazer, in consideration thereof, afterwards, to wit, on the day and year first aforesaid, at Bristol, aforesaid, undertook and faithfully promised the said Zina, to pay him the said sum of money, when he should be afterwards thereto requested.

Second count.   And whereas, also, to wit, on the 7th day of August, A. D. 1821, at Bristol, aforesaid, in consideration that the said Zina had permitted him the said Eleazer, quietly to hold, occupy, and enjoy, a certain other messuage, buildings, farm, and land, with the appurtenances thereto belonging, situate, lying, and being in said Bristol, in said county, and is the same premises conveyed by the said Eleazer, to the said Zina, by deed, dated August

7th, 1819, from the said 7th day of August, 1819, to the 7th day of August, 1821, and that the said Eleazer had, according to the said last mentioned sufferance and permission of the said Zina, holden, used, occupied, possessed, and enjoyed, the same, for a long time, then elapsed, to wit, two years, he the said Eleazer undertook, and then and there faithfully promised the said Zina to pay him so much money, as he reasonably deserved to have of the said Eleazer, when he the said Eleazer should be thereto afterwards requested; and the said Zina avers, that he therefor reasonably deserved to have of the said Eleazer, the further sum of $75, &c. to wit, at said Bristol; whereof the said Eleazer afterwards, to wit, at said Bristol, on the day and year last aforesaid, had notice.   Yet the said Eleazer, his said promises and undertakings, so by him made as aforesaid, not regarding, hath never performed the same, or either of them, or any part thereof, although often requested and demanded; to the damage of the said Zina, as he says, *one hundred* dollars, &c.

*Addison, January, 1826.*

*Richardsor vs. Denison.*

Plea, *Non assumpsit*, and by the agreement of the parties, the issue was joined to the *court*.

The judgment being for the plaintiff below, the defendant tendered a bill of exceptions, which was allowed by the county court, in the words following:

On the trial of the issue, the plaintiff stated, as the ground of his right to recover, that in August, A. D. 1819, the defendant deeded to the plaintiff his farm in Bristol, and that the defendant continued in possession of the premises, after the execution of said deed, for a considerable time, to wit, one year; and he claimed of the defendant the use and occupation thereof, on the implied undertaking of the defendant, to pay for the rents and profits, after the execution of the deed.   On this statement, the defendant's counsel moved the Court to dismiss the said action, because the title of the land was, by the plaintiff's statement, drawn in question, as the plaintiff's right to recover depended on the validity and effect of the deed, executed by the defendant to the plaintiff, in August, 1819, the plaintiff never having been in the actual possession of the land.

But the Court decided, that the justice of the peace had jurisdiction.

To prove his right to recover, the plaintiff called several witnesses.

*Mr. Tucker*, called as a witness, testified, that he understood from the defendant, that by the terms of the sale, he was to keep possession till the first of March, then next, (1820) and afterwards, he heard the defendant say, he meant to go to the plaintiff, and get leave to live there longer—that he could afford to give as much as any body.   That afterwards, one Follet came into the house, and staid until the plaintiff moved in.   That the defendant said he did not know what he should have to give, as he had made no particular bargain.   On *cross examination*, the witness said he got the idea from the defendant, that he was to have a payment from the plaintiff, on the first of March, and

*Addison,*
January,
1826.

Richardson
*vs.*
Denison,

thinks the defendant continued to occupy the house, or some part of it, till about July, while he was burning a coal-pit, &c. though his goods, and part of his family, were removed in the spring, by sleighing—heard the defendant tell the plaintiff, he was willing to make him a reasonable compensation for the use of the premises, &c.

*Mr. Denison,* a brother of the plaintiff, testified, that the writings were. made in August, 1819. He proposed to have the writings lie, until the line should be settled—was present when the writings were made, and heard no bargain that the defendant was to occupy till payments were made. The defendant said he was staying on the place, and wanted him, the witness, to make the plaintiff make some bargain. He heard the defendant say, last June, while attending court at Middlebury, in this cause, that the plaintiff ought to have his pay; but Follet ought to pay it, or part of it.

*Mr. Arnold* testified, that he heard the defendant say, last June, while attending court at Middlebury, that he had rather pay a few dollars, than have a law-suit. He had always understood, from the defendant, that he had a right to stay on the premises, until one or two payments were made.

A deposition of *Seth Peake* was read and referred to.

*Mr. Tucker* testified, that the use of the place is worth the interest of the purchase money, which was $700; and that he understood, from the defendant, that *he* let Follet in for the present.

*Defendant's evidence.*

*Mrs. Soper* testified, that she was present when the writings were made, and understood distinctly, that the defendant was to have possession, until payment was made, of the two hundred and fifty dollar note. The defendant said he should not know what to do, if he did not get his pay. The plaintiff replied, that he might remain in possession, until he received his pay.

*Esq. Soper* testified, that on the 7th of August, 1819, the writings were made—the deed, notes and mortgage—one note for $250, payable the 1st of March, 1820; one for $150, due the 1st of March, 1821; one for $150, due the first of March, 1822. All the writings, the deed, notes, and mortgage, were left in the witness's hands, subject to the directions of both the parties. The notes were not on interest, till the first of March, 1820. The defendant often called on the witness to know if the money was left, and said he did not know what to do—that he could make no other purchase till he got his money, and requested the witness to give up the papers, or have the deeds recorded. That the witness told the defendant, he would not deliver up, or dispose of the papers, except by the agreement of both the parties, as that was the agreement, when the papers were left. That the papers continued in the witness's hands, in this situation, till the 22d of September, A. D. 1820. when both the parties being present, the papers were given up.

*Addison*,
January,
1826.

Richardson
*vs.*
Denison.

*Mr. Follet* testified, that the defendant got through burning his coal-pits, the fore part of June, 1820, and quit the premises about that time, though he was occasionally backward and forward. That the defendant occupied no part of the land that season, but staid in the house occasionally, while burning his coal-pits. That *he* (the witness,) went into the house by leave of the defendant, who told him he could not tell him how long he could stay—perhaps not more than one day, for if the plaintiff paid the money, he would be entitled to possession. That the witness then went to see the plaintiff, and talked the matter over, and told him that the defendant wanted his money. The plaintiff said he had not got it, and did not know that he could get it; and said he did not know as he should ever be able to complete the bargain; but said if the defendant was willing, he, the witness, might go into the house; and the witness did go in, in June, 1820.

After the evidence was heard, the defendant moved to have said action dismissed, because it appeared from the evidence exhibited, that the title of the lands came in question. That the defendant had a right to hold the possession of the land adverse to the plaintiff, until the execution of the deed, which could not be so as to operate as a conveyance, till the 22d September, 1820; which was long after the defendant quit the premises. And that if the plaintiff were entitled to recover at all, it was by virtue of a written contract, and not in respect of actual occupancy; and the question whether the defendant had a right to retain possession of the land, while the deed remained unexecuted, on the 22d September, 1820. is not within the jurisdiction of a justice of the peace to try. But said Court decided, said cause is within the jurisdiction of a justice of the peace to try, and gave judgment for the plaintiff.

Done in Court, this 26th day of June, 1824.

*Signed, &c.*

Upon this bill of exceptions, the present writ of error was brought.

*Aikens*, for the plaintiff in error, contended, that the county court erred, in not dismissing the action on the motion of the defendant below, on two grounds:

1. It distinctly appeared from the plaintiff's *statement*, that he sought to recover, not by virtue of an express promise to pay, but in virtue of a liability in law, *implying* a promise, arising from the fact of the defendant having occupied *the farm of the plaintiff*. And the testimony, which is detailed in the bill of exceptions, does not place the cause on different ground. It shows, as was conceded in the statement, that the real question was, *In whom was the title of the farm, during the period of the supposed occupancy?* This is a question over which a justice of the peace has not jurisdiction, to the amount claimed in this action.—*Stat.* 139, *Ch.* 9, *No.* 9.—*ib.* 140, *Ch.* 9, *No.* 11.—5 *Mass. R.* 125.—7 *do.* 385.—2 *do.* 462, *in note*.

*Addison,*
January,
1826.

Richardson
*vs.*
Denison.

2. The *amount* specified to be due, and set forth in this declaration, as the *matter in demand*, or *cause of action*, is beyond the jurisdiction of the justice. The sum claimed in the *second count*, is averred to be *other* than that declared for in the *first*, both amounting to $150; and the Court cannot presume against the record. It is the *matter in demand*, and not the *ad damnum*, (which does not necessarily embrace in amount the whole cause of action,) by which the jurisdiction of the justice is limited and fixed. (*Stat. ut. supra.*----1 *D. Chip. R.* 380.----2 *do.* 91.) Indeed, the *ad damnum*, in writs returnable before justices of the peace, is surplussage, not required, but omitted in the forms prescribed by statute, and can neither give nor take away jurisdiction.---*Stat.* 330.

If, then, the justice of the peace had no jurisdiction of the action, the county court derived none by the appeal. The proceedings were *coram non judice*, and irregular, and could not be cured. It was the duty of the county court, therefore, to dismiss the action, without plea, and even without motion, in whatever stage the irregularity might be discovered.

*Secondly.* The court erred, in point of law, in deciding, that the testimony amounted to proof of any cause of action. The deed and other writings were signed on the 7th day of August, 1819, but were not *delivered* until the 22d of September, 1820.

A deed takes effect only from the tradition or delivery of it, (2 *Bl. Com.* 307) and cannot have relation back.—*Doe ex dem. of Whatley* vs. *Telling*, 2 *East.* 257.----*Catlin* vs. *Jackson*, 8 *Johns. R.* 520.

The deed in question was not delivered, even as *an escrow*, which is a delivery to a third person, of which the grantee can avail himself absolutely, by the performance of some condition, on his part. But the third person, in this case, was not authorized to deliver the deed, and other writings, except by and with the consent and agreement of *both* the parties; which was not done until the 22d of September, 1820. Until that period, therefore, the land was the land of *Richardson*, and he had a legal right to improve it without account. But previous to that period, he had quit the premises entirely. And as to the subtenant, *Follet*, he went in, subject to the will of *Denison*, provisionally, and with his consent, and would therefore be accountable to Denison alone, from the period that he became seized.

*Phelps*, for the defendant in error, was stopped by the Court, and their opinion was delivered by

HUTCHINSON, J. This is a writ of error, brought to reverse a judgment of the county court, in an action in which Denison was plaintiff, and recovered his damages and costs.

It is contended that this judgment ought to be reversed. 1st, because the Court had no jurisdiction of the action. 2d, because the Court erred, in deciding that Denison could recover, for use and occupation, upon such testimony of the actual occupation, as appears in the case. The only objection that appears

*Addison,*
*January,*
*1826.*

Richardson
*vs.*
Denison.

to have been raised, to the jurisdiction before the county court, is grounded upon the supposition, that the title of land was concerned: of course, that a justice of the peace could have no jurisdiction: and if so, none could be transferred to the county court by appeal. These positions are both correct in principle, if they were supported by facts. It does not appear that the title of land did come in question. The party who tenders his bill of exceptions, with a view to a writ of error, must, at his peril, place so much there as shows that the county court did err; for the presumption is, that their judgment is correct, till the contrary appears. This must appear, either by stating definite law points arising, as on objections to evidence, or written motions to dismiss, which stand demurred to, &c. or by stating the whole evidence, the legal import of which is embraced in the decision: and, in that case, it must appear to be the whole, or this Court cannot ascertain upon what the judgment of the Court below was predicated. In the present case, the bill of exceptions states the testimony of certain witnesses, and that there was a motion to dismiss, for want of jurisdiction; and that the Court refused to dismiss: but it does not state that the evidence recited, was all the evidence in the case, nor upon what ground the Court decided. There might have been other testimony, or the Court may have disbelieved that on which the original defendant relied. There might have been proof of an express contract to pay rent, as demanded by the plaintiff: then the title would not come in question. At least, it might not. On this point there is no error.

A want of jurisdiction is here urged, arising from what is called an enlargement of the plaintiff's claim, by the new declaration filed in the county court. It seems there was one count only before the justice, and two counts before the county court. The *ad damnum*, in both, is within the jurisdiction of the justice, but the sums declared for, in the two counts, when added, amount to 150 dollars. It does not appear that this question was started before the county court. No objection appears to the reception of the new declaration, nor is this objection named in the motion to dismiss. Nevertheless, if the Court had not jurisdiction, and the want of jurisdiction appears upon the record, their judgment must be reversed. But the Court find no such difficulty. The first count is for a sum certain; and the second upon a *quantum meruit.* Both claim rent for occupation of the same premises, for the same period. It is obviously two ways of declaring for the same thing. The second count adopts the form of saying for *other premises.* This is a necessary form. But it sufficiently appears to the Court, that the sum brought into litigation, was within the jurisdiction of the Court. Of course, this objection is overruled.

What is already said, virtually disposes of the second point: for it does not appear upon what ground the Court below decided that point. They decided upon the weight of evidence: and whether they weighed the evidence rightly, or not, is not

*Addison,*
*January,*
*1826.*

*Richardson*
*vs.*
*Denison.*

within the province of this Court to determine. For ought that appears, they disbelieved the testimony : for ought that appears, there was other testimony, not now presented to this Court. It is very probable that this Court, upon having the whole case before them, as it was before the county court, might decide differently from what they have done : but as the case now stands, we cannot say that the Court below erred.

> The judgment of the county court is, therefore, affirmed, and the defendant in error allowed his costs of this writ of error.

*Joseph C. Bradley, J. Doolittle,* and *A. Aikens,* for the plaintiff in error.

*Horatio Needham,* and *S. S. Phelps,* for the defendant in error.